IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| **Plaintiff,**   ) | |
| ) | Criminal No. 14-CR-155-RC |
| v.   ) | |
| ) | |
| **BRIAN PROKES,**   ) | |
| ) | |
| **Defendant.**   ) | |
| ) | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING OF DEFENDANT BRIAN PROKES

Defendant Brian Prokes is scheduled to be sentenced on October 27, 2014, having pleaded guilty to one count of theft of government property. As an employee in the United States House of Representatives, Prokes admitted to submitting paperwork that enabled him to receive approximately $17,916.63 in unauthorized, excess salary and bonus payments. Prokes also admitted to using a government-issued credit card to charge and pay for his and an acquaintance's personal travel expenses, totaling about $1,899.50.

In light of the defendant's criminal offenses and the parties' plea agreement, the government respectfully requests that the Court sentence Prokes to five years of probation, to be followed by three years of supervised release. In addition, Prokes should be ordered to pay restitution in the amount of $19,356.03.[1]

---

[1] The total loss amount of Prokes's theft—as set forth in the Factual Basis, *see* Dkt. No. 6—is approximately $19,816.13. The government, however, credits Prokes with having reimbursed the office of "Congressman A" for about $460.10 in connection to one of the personal travel expenses he impermissibly charged to the Congressman's credit card. Consequently, the restitution amount sought here, accounting for that prior repayment, is 19,356.03.

1

I.       **Background**

      Defendant Brian Prokes is a former office manager in the office of "Congressman A," a member of the United States House of Representatives. Dkt. No. 6, ¶¶ 1-2. On July 17, 2014, Prokes was charged by Information with one count of theft of government property, in violation of 18 U.S.C. § 641. Dkt. No. 1. On July 25, 2014, Prokes pleaded guilty to the theft count. *See* Dkt. Nos. 5-9.

      As part of his guilty plea, Prokes stipulated to a factual basis in which he admitted that, between approximately April 2012 and approximately March 2013, Prokes caused payroll authorization forms to be submitted to the House's Office of Payroll and Benefits in order to inflate his annual salary and year-end bonus. Dkt. No. 6, ¶¶ 11-15. Prokes did not have authority or permission to raise his salary or bonus. *See id.* In addition, Prokes acknowledged that, on two different occasions, he delivered to Congressman A's chief of staff a chart that listed his salary inaccurately by failing to reflect the unauthorized raises that Prokes had given himself. *Id.* at ¶¶ 12 & 15.

      Moreover, Prokes further admitted that, between approximately February 2012 and approximately December 2012, he impermissibly used a government credit card issued in the name of Congressman A. *Id.* at ¶¶ 9, 16-19. The credit card was to be used for expenses related to official government travel. *Id.* at ¶ 9. However, Prokes, by his own admission, used the card on four different occasions during this period to pay for his own personal travel expenses and those of an acquaintance, including air fare and a trip by train. *Id.* at ¶¶ 16-19.

      By virtue of his theft—through both his unauthorized salary and bonus and his unauthorized personal travel expenses—Prokes stole a total of approximately $19,816.13 from the office of Congressman A and, more generally, the U.S. House of Representatives.

## II.  The Plea Agreement

In the plea agreement, the parties agreed on a Stipulated Guidelines Range with respect to Count 1 of the Information charging theft of government property, which was calculated as follows:

- Base Offense Level ……………………………………….+6
- Enhancement for Loss of More Than $10,000 ……….…..+4
- Adjustment for Acceptance of Responsibility …………….-2

**Stipulated Offense Level                              8**

Dkt. No. 5, ¶ 9.a.

Thus, because Prokes is Criminal History Category I, his Stipulated Guidelines Range for the theft count is 0 to 6 months.  *Id.* at ¶ 9.c.  The parties further agreed that neither a downward nor upward departure from the Stipulated Guidelines Range would be appropriate, and a sentence within the Stipulated Guidelines Range would constitute a reasonable sentence under 18 U.S.C. § 3553(a).  *Id.* at ¶¶ 9.c. & 10.  The government agreed not to oppose defendant's request for probation.  *Id.* at ¶ 7.  The parties both acknowledged, however, that the Court is not bound by the Stipulated Guidelines Range or the parties' stipulations.  *Id.* at ¶¶ 7-8, & 12.

## III.  The § 3553(a) Factors Support a Sentence Within the Stipulated Guidelines Range

When fashioning a sentence, courts should consider, among other things, (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence to reflect the seriousness of the offense, provide just punishment, and adequately deter criminal conduct; (3) the Sentencing Guidelines and related policy statements; and (4) the need to avoid unwarranted sentence disparities.  18 U.S.C. § 3553(a).  In this case, these factors support a sentence within the Stipulated Guidelines Range.

Prokes brazenly violated the public trust bestowed upon him as an employee in the office of a United States Congressman, when he chose to exploit his position for his own greed and self-interest. As an office manager in Congressman A's office, Prokes was entrusted, among other things, to handle payroll matters and payments relating to the office's government-issued credit card. *See* Dkt. No. at ¶¶ 6-7, 10. Prokes, however, took advantage of his role within the office, and the authority and access it afforded him, by abusing the very responsibilities with which he was entrusted and duty bound. Prokes was asked to help manage the office's payroll and credit; instead, he manipulated both for his own personal and undeserved gain.

Prokes submitted illegitimate payroll forms to the Office of Payroll and Benefits in an effort to reward himself with more than $17,000 that he did not earn and to which he was not entitled. In addition, Prokes charged nearly $2,000 to the congressional office's credit card to pay for his and an acquaintance's personal travel expenses. These criminal offenses occurred over the course of about thirteen months (approximately February 2012 to approximately March 2013).

Not only do those facts clearly demonstrate Prokes's serious criminal conduct, but they also underscore the premeditation and deliberateness with which he committed those crimes. Month after month, for almost a year, Prokes stole unearned salary. He repeatedly lined his pockets with money that was not his to have. In fact, after months of receiving illegitimate pay, all owing to his own fraud, Prokes impermissibly raised his bonus in November and December 2012. *See* ECF No. 6, ¶ 13. As a result, he received thousands of dollars *more* in illicit funds, above and beyond what he already was stealing. And after the bonus, he continued to claim more in illegitimate annual salary. *See id.* at ¶ 14.

Prokes, however, did not restrain his greed and limit his acts merely to the payroll, nor did he attempt to steal only for himself. Instead, he also misappropriated the office credit card so that he and an acquaintance could travel at the government's—and, thus, the taxpayers'—expense. Moreover, in apparent attempts to conceal his crimes, Prokes twice provided the Congressman's chief of staff with a chart that inaccurately reflected his own salary, so as to enable Prokes to hide his theft and continue to perpetrate his scheme.

Together, these facts evince the audacity and severity of Prokes's theft, which—with nearly $20,000 in illicit benefits—was significant. They also rebut any assertions that Prokes did not understand or appreciate the egregiousness of his misconduct, or that he simply made a mistake. Prokes did not merely make a poor decision; he made a criminal decision intended to enrich himself over a lengthy period of time. Prokes's punishment therefore should reflect that misconduct and the harm he inflicted upon the government—both its finances and its institutional integrity and reputation. Indeed, Prokes's offenses, committed by a congressional employee, are precisely the types of criminal acts that undermine morale and public confidence in the government and its servants. Accordingly, a sentence here must fairly punish those offenses and serve to deter similar crime in the future.

Considering the above factors, the need to sufficiently and justly punish Prokes, promote respect for the law, and deter future criminal conduct, the government requests a sentence of five years of probation, along with three years of supervised release.

## IV.    Restitution

The plea agreement specifies that the Court may order Prokes to pay restitution pursuant to 18 U.S.C. § 3663. Dkt. No. 5, ¶ 16. As explained above, Prokes admitted that his theft totaled approximately $17,916.63 in unauthorized, excess salary and bonus payments, and

approximately $1,899.50 in unauthorized, personal travel expenses.  Prior to this case, Prokes repaid about $460.10 of the illegitimate travel expenses.  The government therefore requests that the Court enter an order holding Prokes liable for restitution in the remaining full amount of $19,356.03.

**V.      Conclusion**

For these reasons, the government respectfully asks the Court to sentence defendant Brian Prokes to five years of probation and three years of supervised release for the count of theft of government property.  The government further requests the Court to order Prokes to pay restitution to the office of Congressman A and the U.S. House of Representatives in the amount of $19,356.03.

Date:   October 10, 2014            Respectfully submitted,

JACK SMITH
Chief
Public Integrity Section

By:     */s/ Sean F. Mulryne*     ___
Sean F. Mulryne
Kevin O. Driscoll
Trial Attorney
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW
Washington, D.C. 20005
(202) 514-1412

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 10th day of October, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the attorney of record for the defendant.

*/s/ Sean F. Mulryne*
Sean F. Mulryne
Trial Attorney
